UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 9:17-cv-80959

PHILIP REVIEN,

      Plaintiff,

v.

EASTERN REVENUE, INC.,

      Defendant.

_____/

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGEMET WITH INCORPORATED MEMORANDUM OF LAW**

      Plaintiff PHILIP REVIEN ("Plaintiff"), by and through undersigned counsel and pursuant to the Federal Rules of Civil Procedure, files this Response and Memorandum of Law in Opposition to Defendant, EASTERN REVENUE, INC.'S ("Defendant"), Motion to for Summary Judgement (the "Motion"), and in support thereof, states the following:

## I. BACKGROUND AND INTRODUCTION

      1.      On August 17, 2017, Plaintiff filed the Complaint [D.E. 1] against Defendant alleging violations of §§ 1692a, 1692e and 1692f of the Fair Debt Collection Practices Act (the "FDCPA") and § 559.72(9) of the Florida Consumer Collection Practices Act (the "FCCPA") by attempting to collect a debt, by and though a series of collection letters attached hereto as "Exhibit A" (the "Collection Letters"), from Plaintiff, in violation of the FDCPA and FCCPA because, *inter alia*, the collection letters attempted to collect collection costs and credit card processing fees which Defendant was not expressly authorized by contract or statute to collect from Plaintiff." [D.E. 1 at ¶ 54].

1

2.      On September 27, 2017, Defendant filed its Answer and Affirmative Defenses [D.E. 18] to the Complaint.

3.       On December 26, 2017, Plaintiff filed a Joint Stipulation of Dismissal [D.E. 31] dismissing three of the six counts in the Complaint.

4.      On January 16, 2018, Plaintiff filed his Motion for Partial Summary Judgement. [D.E. 34].

5.      On January 16, 2018, Defendant filed its Motion for Summary Judgement (the "Motion"). [D.E. 33].

6.      Currently, the only issues remaining in this case are whether Defendant's attempt to collect a 23% collection fee (totaling $757.20), a credit card processing fee (of $15.00 for payments up to $500.00 and 15% for payments of $500.00 or more) violated §§ 1692e, 1692f or 1692g FDCPA and/or Fla. Stat. §559.72(9)

7.      At its core, Defendant's Motion sets forth two arguments:

   (a)      That Defendant is authorized to collect collection fees and credit card processing fees and;

   (b)      Defendant did not violate the FDCPA or FCCPA because defendant was entitled to collect collection fees, processing fees and interest.

## II. STANDARD

8.      Summary Judgment is appropriate under Fed.R.Civ.P. 56(c) when the court, viewing the record as a whole and in the light most favorable to the non-moving party, determines that there exists no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. *Clemons v. Dougherty County, Ga.*, 684 F.2d 1365 (11th Cir. 1982). Once the moving party satisfies its burden, the burden of persuasion shifts to the non-moving party to

establish the existence of a genuine issue of material fact. The non-moving party must set forth specific facts showing a genuine issue of material fact. *Celotex Corp v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548 (1986). The court's role is to determine if there is sufficient evidence for a reasonable jury to find for the non-moving party. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 106 S.Ct. 2205 (1986).

## III.    ARGUMENT

**A. The Collection Fees Charged by Defendant are Prohibited by 11th Circuit Precedent as they were Not Expressly Authorized by the Note**

9.    When Plaintiff allegedly signed the Promissory Note (the "Note") and agreed to pay "reasonable collection costs," he did not expressly agree to a charge of 23% (totaling $757.20), and therefore Defendant violated the FDCPA by attempting to collect such a charge. The FDCPA prohibits debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt" as well as the use of "unfair or unconscionable" means of collection. 15 U.S.C. §§ 1692e, 1692f. A debt collector violates the FDCPA when it charges the debtor a collection fee based on a percentage of the principal balance of the debt due rather than the *actual cost* of collection. *Bradley v. Franklin Collection Service, Inc*., 739 F.3d 606 (11th Circ. 2014).

10.    In *Bradley*, a recent 11th Circuit case with the same issue as presented here, the plaintiff incurred a medical debt. Similar to the case here, the plaintiff in *Bradley* signed an agreement that established terms of payment including that he would be responsible to pay collection costs. The relevant clause in the agreement in *Bradley* stated:

> I agree that if this account is not paid when due, and the hospital should retain an attorney or collection agency for collection, *I agree to pay all costs of collection* including reasonable interest, reasonable attorney's fees (even if suit is filed) and *reasonable collection agency fees*.

*Id*. (Emphasis Added).

3

11.     Once the account was turned over to a debt collector, a 33.3% collection fee was sought for collection in addition to the outstanding principle balance. Since the 33.3% collection fee assessed had *no relation to the actual cost of collection*, adding a 33.3% collection fee was deemed to be *not authorized by the agreement*. *Id.* at 610.

12.     The court in *Bradley* stated that it is the nature of the agreement that is important, not the amount of the fee. *Id*. at 610. The court did state that a percentage-based collection fee *could* be charged if agreed to. *Id.*  The court stated that an example of how a percentage-based fee can be agreed upon appeared in the Seventh Circuit case of *Seeger v. AFNI*, Inc., 548 F.3d 1107, 1110, 1113 (7th Cir.2008). *Id* at 610. In that case, the agreement stated, "[y]ou agree to reimburse us the fees of any collection agency, which may be based on a percentage at a maximum of 33% of the debt, and all costs and expenses, including reasonable attorneys' fees, we incur in such collection efforts." *Seeger v. AFNI, Inc*., 548 F.3d 1107, 1110, 1113 (7th Cir.2008). *Seeger* and *Bradley* hold that a percentage-based collection fee does not violate the FDCPA as long as it is *expressly* agreed upon.

13.     In the case at bar, a percentage-based collection fee was not expressly agreed upon. The Note at issue here stated that Plaintiff would:

> promise to pay the school, or a subsequent holder of the Promissory Note, the sum of amount(s) advanced to me under the terms of the Note, plus interest and other fees which may become due as provided in this Note. I promise to pay all *reasonable collection costs*, including attorney fees and other charges necessary for the collection of any amount not paid when due."

Exhibit B of Defendant's Motion.

14.     Although the 11th Circuit provides sufficient guidance through *Bradley* in adjudicating the instant matter, taking a look at a couple post-*Bradley* cases may be instructive to this Court. For instance, just two months ago in  *Cornette v. I.C. System, Inc.*, this Court relied on

4

*Bradley* and held that the defendant there violated §1692e and §1692f by attempting to collect a percentage-based collection fee when plaintiff had agreed to "guarantee payment of all attorney's fees, court costs and *collection charges incurred up to 40% of the outstanding principal*." 16-24454-CIV, 2017 WL 5903557, at *4 (S.D. Fla. Nov. 30, 2017) (J. Cooke).

15.     More pointedly, in concluding that a 20% percentage-based collection fees must be *expressly* disclosed to be permissible, this Court held:

> This makes the 20% fee either a percentage-based fee or an estimated fee, both of which the Eleventh Circuit held to be inconsistent with "actual costs" and the word "incurred" in the FDCPA context. *See Prescott v. Seterus, Inc.*, 635 Fed. Appx. 640, 644 (11th Cir. 2015); *Bradley*, 739 F.3d at 609.
> . . .
> If [defendant] had wanted to charge a percentage fee or charge estimated fees, it could easily have drafted its agreement to allow for such costs; however, it did not.

*Cornette*, 2017 WL 5903557, at *4.

16.     Although *Cornette* was not addressed by Defendant in its Motion, Defendant's counsel is very much aware of it given the fact that he represented one of the defendants in *Cornette*. In fact, Defendant cites to **zero** cases to support its arguments that the language in the Note could be considered to have sufficiently provided *express disclosure* of a 23% collection fee; nor could it given the fact that all cases in this district touching on this issue side with Plaintiff's position that percentage-based collection fees not expressly agreed to in an agreement violate the FDCPA.

17.     This Court also addressed the same issue as presented here just a little over a year ago in the case of *Fonseca v. Focus Fin. Service*s, 15-80410-CIV, 2016 WL 4146663 (S.D. Fla. Aug. 1, 2016) (J. Matthewman).  There, Plaintiff was charged a 10% late charge and 35% collection fee. The underlying agreement between plaintiff and the original creditor stated, "plaintiff to agree to pay 'collection charges incurred in the event collection action is initiated',

and the [agreement] required plaintiff to pay any 'charges and collection fees not covered by [her] insurance carrier.'" *Fonseca*, 2016 WL 4146663, at *6. Plaintiff sued the defendant for violating §1692e and §1692f as Plaintiff does here. In denying defendant's motion for summary judgement this Court issued a detailed analysis as to why *Bradley* indeed prohibits percentage-based collection fees when they are not expressly agreed to in the underlying agreement:

> Even under the portion of the *Bradley* analysis cited by Defendant and taking into account the nature of the agreement between Plaintiff and SFCGO, *it would be unreasonable for a patient to expect that a late charge of 10% and a collection fee of 35% would be added to one overdue balance. The language of the [underlying agreement] executed by Plaintiff **do not explicitly state that 10% and 35% fees may be imposed and do not even explicitly state that more than one such fee would be imposed**. It is not beyond dispute that such fees are authorized by the documents signed by Plaintiff. When the Court takes all of the undisputed facts and reviews them in the light most favorable to Plaintiff, the law does not support summary judgment in this case.* Defendant has failed to demonstrate that the first two collection fees did not violate the FDCPA as a matter of law, and any doubt regarding whether a trial is necessary must be resolved in favor of Plaintiff.

*Fonseca*, 2016 WL 4146663, at *6. (Emphasis added).

18.     In sum, returning to the case at bar, taking into account the abundance of case-law on the issue, the relevant language in the Note cannot with a straight face be said to have *expressly* disclosed to Plaintiff that he would be held liable for a 23% ($757.20) collection fee added to the sum of his outstanding balance; nor is it reasonable to expect that the least-sophisticated consumer[1] would be placed on such actual notice either. Rather, the language in the note can suggest to the least-sophisticated consumer that such fees would be related in some way

---

[1] The Eleventh Circuit has adopted the "least sophisticated consumer" standard in reviewing alleged violations of the FDCPA. *Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168 (11th Cir. 1985). The purpose of the least-sophisticated consumer standard is to ensure the protection of the gullible as well as the shrewd. *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185 (11th Cir. Fla. 2010). "The fact that a false statement may be obviously false to those who are trained and experienced does not change its character, nor take away its power to deceive others less experienced." *Jeter*, 760 F.2d at 1168. "Literally, the least sophisticated consumer is not merely 'below average,' he is the very last rung on the sophistication ladder. Stated another way, he is the single most unsophisticated consumer who exists. *Gammon v. GC Servs.*, 27 F.3d 1254, 1257 (7th Cir. 1994).

6

to the time and/or expense involved in collections. Certainly, a percentage-based fee was not *expressly* agreed upon by Plaintiff. *See Bradley*, 739 F.3d at 610 ("[T]he agreement creating the debt—the patient agreement between Urology and Bradley—only allows a charge for 'costs of collection.' Nowhere on the form does Bradley agree to a collection fee that is *not tied to the actual costs of collection*, let alone the 33.3% 'collection fee' he was ultimately assessed.") (emphasis added).

19.     For these reasons, Defendant is not entitled to summary judgment because genuine issues of material fact remain as to whether Defendant was allowed to charge a 23% collection fee not *expressly* agreed to by the parties.

**B. Defendant's Attempt to Distinguish this Case from *Bradley* and its Progeny Fails**

20.     In obvious dire need, Defendant in its Motion alludes to three arguments in its attempt to isolate itself from the binding precedent established by *Bradley* and the cases that followed. First, Defendant argues that the relevant language at issue in the Note is broader than in the agreement *Bradley*. Motion at pg. 10. Second, Defendant argues that its so-called "make whole" method escapes the ruling in Bradley. *Id.* Third, Defendant attempts to claim that the Perkins Loan Statute saves Defendant from violating the FDCPA because the Statute allegedly allows for the collection of the collection fees in question. Motion at pg. 7. All three of Defendant's arguments are addressed below.

**i. The Note is not Broad Enough to Contemplate a 23% ($757.20) Collection Fee**

21.     Defendant attempts argue that the language in the Note is broader than that at issue in *Bradley* because in addition to stating "I promise to pay *all reasonable collection* costs" the Note also states "including attorney fees and other charges necessary for the collection of any amount not paid when due." To begin with, Plaintiff submits that, contrary to Defendant's

opinion, *it is in fact the language in the agreement is Bradley that is broader than the Note here* because the agreement stated "[i]n the event of non-payment . . . **I *agree to pay all costs* of collection**. . . ." *Bradley*, 739 F.3d at 609. (Emphasis added.) The undersigned does not believe that it can get any broader than "I *agree to pay all costs* of collection" as stated in the agreement in *Bradley*. Nonetheless, as we know, even with such broad language, the 11th Circuit in *Bradley still held* that "under the contract at issue, Bradley agreed to pay the actual costs of collection; he did not agree to pay a percentage above the amount of his outstanding debt that was unrelated to the actual costs to collect that debt. *Bradley*, 739 F.3d at 610.  Defendant's attempt to stretch the reading of the language in the Note here is simply futile.

22.     Nonetheless, even if the language in the Note here were to be considered by this Court to be broader than the agreement in *Bradley*, it is still not broad enough to reasonably expect that Plaintiff or the least-sophisticated consumer, by agreeing to "other charges necessary for the collection of any amount not paid when due" *means that Plaintiff or the least-sophisticated consumer expressly agreed to a 23% ($757.20) collection fee* (assessed before any collections work by Defendant was even exercised).  As may now be apparent, the "other charges necessary for the collection of any amount not paid when due" language in the Note seems to be ambiguous at best; especially to the least-sophisticated consumer. Defendant cannot now turnaround and attempt to manipulate ambiguous language into a convenient shape that fits its unreasonable desired construction.   "In general, ambiguities in contracts are construed against their drafters." *Cornette*, 2017 WL 5903557, at *4 (*quoting Key v. Allstate Ins. Co.*, 90 F.3d 1546, 1546 (11th Cir. 1996)).

23.     As if even more was needed to defeat Defendants argument, it is important to note that the relevant language in the agreement in *Cornette* that this Court analyzed was even

broader than Defendant could ever wish the language in the Note here to be.  The language in the agreement in *Cornette* stated that "in the event collection action is required to be initiated by [defendant], *I hereby guarantee payment of all attorney's fees, court costs and collection* **charges incurred up to 40% of the outstanding principal**." *Cornette*, 2017 WL 5903557, at *1.  This Court, in following *Bradley's* analysis still rejected Defendant's argument and ruled *that even a 20%* collection fee assessed by the defendant was not permissible when it was not expressly agreed upon by the parties nor bore any relationship to *actual costs incurred* and therefore violated the FDCPA. *Id*.

24.     Defendant's attempt to have this court read none existent language into the Note should not be entertained; there clearly was no *express agreement* to a 23% ($757.20) collection fee in the Note.

25.     For these reasons, Defendant's argument that the language in the Note is broad enough to allow for the collection fees at issue here should be rejected.

**ii. Regardless of Whether the 23% Collection Fee was Added Before or After it was Placed with Defendant for Collections is Irrelevant**

26.     Defendant next attempts to escape being bound by *Bradley* by stating that that unlike *Bradley*, the collection fees here were added after the account was placed for collections and not before. Motion at pg. 10. Defendant describes such conduct as using the "make whole" method. This attempt to split hairs to distinguish this case from *Bradley* is not persuasive for at least three reasons:

27.     First, the Note never expressly called for the allowance of the 23% collection fee; Plaintiff only agreed to "reasonable collection costs" which under 11th Circuit precedent *means actual costs incurred*. *Bradley*, 739 F.3d at 610 ("Under the contract at issue here, Bradley agreed to pay the actual costs of collection; he did not agree to pay a percentage above the

amount of his outstanding debt that was unrelated to the actual costs to collect that debt. . .

Nowhere on the form does Bradley agree to a collection fee that is not tied to the actual costs of

collection, let alone the 33.3% "collection fee" he was ultimately assessed.").

28.     Furthermore, Defendant here attaches to its Motion a contract entered into

*between Defendant and Iona College* (the "Creditor") apparently allowing for Defendant to add

23% to the balance of the debt under what Defendant calls the "make whole" method. Exhibit D

of Defendant's Motion.  Critically however, Plaintiff was not a party to the agreement between

Defendant and the Creditor.  Plaintiff obviously never consented to the collection terms between

Defendant and the Creditor.  Just because Defendant entered into an alleged agreement with the

Creditor to add a 23% collection fee does not change the fact that the Note never expressly

allowed for the collection fees at issue here.  *Bradley* unequivocally supports this elementary line

of reasoning as the same argument was stuck down by the 11th Circuit:

> Urology is a healthcare provider that also uses Franklin to collect unpaid medical
> bills. The collection contract between Urology and Franklin stated that Urology
> would add 33–and–1/3% to a debt prior to transferring the account to Franklin.
> The contract also stipulated that Franklin was entitled to 30% of the total
> collected from each debt. Critically, Bradley was not a party to this agreement.
>                                      . . . .
> **Urology and Franklin cannot alter Bradley's obligations by the terms of their**
> **subsequent agreement. Because there was no express agreement between**
> **Urology and Bradley allowing for collection of the 33–and–1/3% fee, that fee**
> **violates the FDCPA.** See 15 U.S.C. § 1692(e); *see also Kojetin v. C U Recovery,*
> *Inc.,* 212 F.3d 1318, 1318 (8th Cir. 2000).

Bradley v. Franklin Collection Serv., Inc., 739 F.3d 606, 609-610 (11th Cir. 2014) (emphasis
added).

29.     Second, regardless if whether the collection fee was added to Plaintiff's balance

*before or after is irrelevant* for the simple reason that regardless of when the collection fee was

added to the balance, plaintiff is being charged an amount which he did *not expressly agree to be*

*charged*.  Whether the flat 23% collection fee is added on before it reaches a collector or after,

10

the violative conduct still exists; that is, the collection of a percentage-based collection fee that in no way correlates to the actual costs incurred and was never expressly agreed to by Plaintiff in the Note.

30.     Third, by Defendant's own admission, the collection fees are in *no way correlated to actual costs of collection* as the fess are not actual costs incurred, but rather an *estimation* at best.  As Defendant states in its Motion:

> [The "make-whole" method] ***relates*** to the actual cost of collection because it ***attempts*** to reimburse both creditor and collector by using a more exacting ***calculation*** to tally expenses on an on-going basis—the more a creditor charges in pursuit of someone's outstanding debt, the more that person is expected to pay. This is inherently different than the flat fee method used in *Bradley*, which was charged *before* any collection costs were incurred and does not ***attempt to calculate the actual costs*** incurred on an on-going basis.

Motion at pg. 10.

31.     In the excerpt above, it is clear that what Defendant is trying to do is avoid admitting that they are using a percentage-based fee and instead attempt to claim it as an *estimation* of actual costs.[2]  Unfortunately for Plaintiff, this Court has explicitly held that "a *percentage-based fee **or an estimated fee***, [are both types of fees] which the Eleventh Circuit held to be *inconsistent with 'actual costs' and the word 'incurred' in the FDCPA context*." *Cornette*, WL 5903557, at *4 (emphasis added) (*citing Prescott v. Seterus, Inc.*, 635 Fed. Appx. 640, 644 (11th Cir. 2015); *Bradley*, 739 F.3d at 609).

---

[2] The "make whole" method is nothing more than a percentage-based fee that has **zero correlation** to actual costs in collecting the debt.  By Defendant's admission in the Motion, the 23% ($757.20) collection fee was added to Plaintiff's balance *the moment it was placed with Defendant*.  Tellingly, Defendant never argues that the *actual costs incurred* were 23% of the outstanding balance (totaling $757.20); nor could it as such an argument would be ridiculous since the collection fees were added before anyone in Defendant's office even examined Plaintiff's account or even before a single letter was ever sent out; or any other collections efforts for that matter.

32.     The 11th Circuit also expressly states that the use of an estimated fee violates the

FDCPA:

> Section 1692f of the FDCPA provides that "[a] debt collector may not use unfair
> or unconscionable means to collect or attempt to collect any debt," including
> "[t]he collection of any amount (including any interest, fee, charge, or expense
> incidental to the principal obligation) unless such amount is expressly authorized
> by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1).
> Prescott contends that he was not expressly obligated under the security
> agreement to pay for estimated attorney's fees. We agree.
> The security agreement does obligate Prescott to pay for attorney's fees and other
> expenses that Seterus actually incurred as a result of his default, ***but nothing in it
> explicitly states that Prescott must pay estimated fees*** for future legal services.
> The question is whether the least sophisticated consumer would have nonetheless
> understood the agreement to obligate Prescott to pay such fees. *See LeBlanc,* 601
> F.3d at 1200–01. **The answer is no**.

*Prescott v. Seterus, Inc.*, 635 Fed. Appx. 640, 644 (11th Cir. 2015).

33.     For these reasons, Defendant's argument that because it used a so-called "make

whole"[3] method and added a percentage-based fee to the balance after the debt was placed in

collections as opposed to before it was placed for collection is irrelevant and should be rejected

because Plaintiff was nonetheless assessed collection fees that are uncorrelated to the actual cost

of collection which he did not expressly agree to to begin with.

### iii. The Perkins Loan Statute does not Save Defendant but rather Assists in further Demonstrating Defendant's Violations of the FDCPA

34.     Finally, Defendant's last attempt to distance itself from Bradley and its progeny is

made by attempting to mislead this Court into believing that the Perkins Loan Statute (34 CFR

---

[3] The undersigned was only able to locate a single source that defines the so-called "make
whole" method. The source is that of another debt collector's publicly published collection
guidelines. A copy of this source is attached as Exhibit B. In the guideline, the "make whole"
method is defined as, *completely* opposite of Defendant's self-serving proffered definition, the
*creditor* adding the collection fee *before* it is placed with a debt collector. *Id.* Ironically, the
source also warns that the "make-whole method" runs a real risk of violating the §1692f of the
FDCPA. *Id.* at pg. 2.

674 *et seq.*) "clearly authorizes the collection" of the 23% ($757.20) collection fee. *See* Motion

at pg. 6.  In support of its argument Defendant cites to 34 CFR 674.31(b)(5) where the Perkins

Loan Statute states "[t]he promissory note must state that the borrower shall pay all attorney's

fees and other loan collection costs and charges." Motion at pg. 7.  Thus, according to

Defendant, because of this language in the Statute, Defendant wants this Court to believe that it

is "*clearly authorized"* to collect the 23% ($757.20) collection fee.

35.     Critically, Defendant omits §674.45(e) from its analysis of the Perkins Loan

Statute.  Section 674.45(e) regulates the *procedures and amounts of collection costs* that may be

collected on a Perkins Loan debt.

36.     Section 674.45(e) of the Perkins Loan Statute states:

> (1) Subject to § 674.47(d), the ***institution shall assess against the borrower***
> all ***reasonable costs <u>incurred</u>*** by the institution with regard to a loan
> obligation.

> (2) The institution shall determine the amount of collection costs that shall
> be charged to the borrower for actions required under this section, and §§
> 674.44, 674.46, 674. 48, and 674.49, based on ***either*** -

> (i) ***Actual costs incurred*** for these actions with regard to the individual
> borrower's loan; or

> (ii) Average costs incurred for similar actions taken to collect loans ***in
> similar stages of delinquency***.

> (3) For loans placed with a collection firm on or after July 1, 2008,
> ***reasonable collection costs charged to the borrower may not exceed*** -

> (i) For first collection efforts, 30 percent of the amount of principal, interest,
> and late charges collected;

> (ii) For second and subsequent collection efforts, 40 percent of the amount
> of principal, interest, and late charges collected; and

> (iii) For collection efforts resulting from litigation, 40 percent of the amount
> of principal, interest, and late charges collected plus court costs.

34 CFR 674.45(e). (Emphasis added.)

37.     Thus, synthesizing § 674.45(e) of the statute, any collection costs, as a threshold matter, must be "*reasonable costs incurred*." § 674.45(e)(1).  Once this requirement is met the collection cost will be permissible so long as the actual costs incurred does not *exceed* "30 percent of the amount of principal, interest and late charges collected" for accounts placed into collections after 2008. § 674.47(e)(3).  Clearly, Defendant does not even reach the second inquiry determining whether the costs incurred are less than or equal to "30 percent of the amount of principal, interest, and late charges collected" because it violated the first prong by attempting to collect a percentage-based collection fee that **is not correlated, to the actual costs incurred to collect the debt**.

38.     To this end, it becomes apparent that the statute that Defendant attempt to rely on actually *tracks* the ruling in *Bradley* and the cases in this district that followed which held that reasonable collection costs is to be construed to mean "actual costs incurred.".   The Perkins Loan Statute explicitly mandates the collection of only "reasonable costs *incurred*." §674.47(e)(1).  As this Court held, collecting a percentage-based fee is inconsistent with the word "incurred." *Cornette*, WL 5903557, at *4 ("a percentage-based fee or an estimated fee, both of which the Eleventh Circuit held to be inconsistent with **'actual costs' and the word 'incurred'** in the FDCPA context." (*citing Prescott v. Seterus, Inc.*, 635 Fed. Appx. 640, 644 (11th Cir. 2015); *Bradley*, 739 F.3d at 609)).

39.     Totally opposite to what Defendant claims in its Motion, the plain reading of the of the Perkins Loan Statute, in conjunction with this Court's precedent, clearly shows that the Perkins Loan Statute explicitly limits to the collection of collection fees to those *actually incurred* and not a percentage-based fee or estimation.  For these reasons, Defendant's claim that

14

the Perkins Loan Statute "clearly authorizes" the collection of the 23% ($757.20) collection fee

should be rejected.

**C. The Credit Card Processing Fees Were Not Expressly Agreed to in the Note or through Statute, nor are the Credit Card Processing Fees in any way Correlated to the Actual Costs of Processing Credit Cards**

39.     At issue here is also whether the credit card processing fees that Defendant

attempts to collect in their letters are permissible. Sections 1692f through 1692f(1) of the

FDCPA read:

> A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> (1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

15 U.S.C § 1692f-(1).

40.     In every letter sent to Plaintiff in connection to Defendant's attempt to collect the

debt, Defendant informed Plaintiff that he would be subjected to a credit card processing fee of

"$15.00 for all payments of $500.00 or less and 5% to any payment over $500.00." Exhibit A.

41.     As the FDCPA states, in order for Defendant to collect or attempt to collect the

processing fee, Defendant must be able to demonstrate that it is "*expressly . . . permitted by law*"

or "*expressly* authorized by the agreement creating the debt" to collect such fees. 15 U.S.C. §

1692f(1); *see also Townsend v. Quantum3 Group, LLC*, 535 B.R. 415, 426 (M.D. Fla. 2015)

("[l]ooking to the plain language of 1692f(1), the court interprets the section to permit the

collection of a fee in addition to the principal obligation *if such fee is expressly authorized by the*

*agreement creating the debt or is otherwise permitted by state law.*"). (Emphasis added).

15

42.     Here, nowhere in the Note or in the Perkins Loan Statute is there any language *expressly* permitting for the charging of a credit card processing and for such reason alone, the credit card processing fee should be deemed violative of the FDCPA.

43.     Taking a peek into Defendant's Response to Plaintiff's Motion for Partial Summary Judgement, it is probable that Defendant will likely argue in its reply to this Response that the credit card processing fees were proper for three reasons:

1.) The credit card processing fee is an actual cost to Defendant that is being passed on to Plaintiff;

2.) The credit card processing fee was avoidable by using some other form of payment and;

3.) Since Plaintiff never submitted a credit card payment, he was never charged the fee and therefore was not harmed.

44.     As to Defendant's first anticipated argument, the credit card processing fees Defendant attempts to collect ***are not*** merely a cost from the credit card processing company being passed on to Plaintiff.  The Court can be certain that any argument stating otherwise is simply untrue because the processing fees being charged are, again, "$15.00 for all payments of $500.00 or less and 5% to any payment over $500.00."  To illustrate by way of example, if Plaintiff was to make a payment to Defendant for $30.00 *via* credit card towards the debt, he would be charged an additional $15.00 credit card processing fee which represents a 50% additional incidental charge *not expressly authorized by the Note or any statute*. Now keep in mind that the average cost of processing a credit card by a business is between .01% - 3%.[4]  This

---

[4] Source: https://www.forbes.com/sites/groupthink/2014/11/26/how-to-avoid-overpaying-for-merchant-services/#70e886a775f0. (Last accessed Feb. 14, 2018).

means that **in the example above, where Plaintiff makes a $30.00 payment and incurs an additional $15.00 processing fee, Defendant is collecting a profit of about $14.00 and only paying about $1.00 in actual processing fees** incurred.  The processing fees here are really a hidden **profit-center** for Defendant as Defendant is **pocketing the difference between the amount it pays to credit card processing companies and the amount of "credit card processing fees" collected from consumers like Plaintiff here.** This conduct is expressly prohibited by §1692f and §1692e of the FDCPA.  Many courts, including in this District, have held that when a debt collector is making profits on a credit card processing fee, such conduct violates the FDCPA. *See Weast v. Rockport Fin., LLC*, 115 F. Supp. 3d 1018, 1022 (E.D. Mo. 2015):

> The Court also rejects Defendant's argument that the $3.00 convenience fee is not prohibited by the FDCPA, as a matter of law, because it relates to an additional service by a third-party. Defendant's reliance on *Lee v. Main Accounts, Inc.,* No 96–3922, 125 F.3d 855 (table), 1997 WL 618803 (6th Cir. Oct. 6, 1997), is misplaced. In that case the court determined on summary judgment that a five percent charge on payments made by credit card did not violate the FDCPA, because the defendant 'would not have received any additional compensation from the credit card fee.' Such evidence may be forthcoming at the summary judgment stage, but based on the record before it, the Court cannot say that Defendant would not receive any profit from charging $3.00 for each credit/debit card transaction.

46.     As demonstrated above, it can be said with a level of high certainty the Defendant is making a profit on the credit card processing fees it sought to collect. Not only are the processing fees not limited to actual pass-through costs (which even if they were, they were still not not expressly authorized by the Note or any statute) but it also violates §1692f and §1692e of the FDCPA because the processing fees are a hidden source of profits.  Any argument by Defendant attempting to claim that the credit card processing fees are "pass-through" costs should be rejected.

47.     As to Defendant's second anticipated argument, just because a collection letter may have provided an alternate payment method in which Defendant could have avoided using a credit card and incurring a credit card processing fee (i.e., payment through check or money order) does not mean that the *attempt to collect the illegal fee* magically disappears. **"**Offering a payment option that does not violate the FDCPA does not save offering a payment option that would violate FDCPA, as the latter is still an attempt to collect a fee prohibited by the FDCPA." *Weast v. Rockport Fin., L.L.C.,* 115 F. Supp. 3d 1018 (E.D. Mo. July 17, 2015); *see also Shami v. Nat'l Enter. Sys.*, WL 3824151, at *3–4 (E.D.N.Y. Sept. 23, 2010) (holding that the defendant's charging of transaction fees for payments by phone or internet were still fees "incidental to Plaintiff's purported actual debt" prohibited by § 1692f(1), even though they were conditioned on the chosen method of payment.).  Such an argument is analogous to believing that if a criminal offers a prohibited item for sale, along with two unprohibited items for sale, the criminal is doing nothing wrong because a potential purchaser has the option to choose one of the unprohibited items.

48.     This court need not even rule on such a ridiculous argument were it to be made considering that Defendant sent a letter to Plaintiff on March 21, 2017 (15 days after the mailing of the letter attached to Defendant's Motion as Exhibit A) which *only offers the ability to make payment via credit card* along with the mandatory credit card processing fee.  Exhibit A at pg. 5.

49.     Finally, Defendant may argue that because it only *attempted* to, but *did not actually*, collect an illegal credit card processing fee from Plaintiff, there cannot be a violation of §1692f(1) of the FDCPA because §1692f(1) is only invoked if Defendant *actually collected* the processing fee.  However, such an argument would fail because §1692f(1) is preceded by the general provision of §1692f which states that "[a] debt collector may not use unfair or

18

unconscionable means **to collect or attempt to collect** any debt." (Emphasis added).  Many courts

in addressing this very issue have found that when a processing fee involves more than a pass-

through fee (i.e, a profit is being made on the processing fee) then we are not within §1692f(1)

but rather §1692f.  As another court has stated regarding this very issue:

> As explained below, this Court agrees with the analysis from *Longo* and *Shami*.
> To prevail on [defendant's] argument that the FDCPA is inapplicable, Defendant
> must show that its $14.95 credit card processing fee was a pass-through fee. If so,
> then there is no "collection," as that term is used by Section 1692f(1).
> . . .
> It follows from this Court's construction of the term "collect" and analysis of the
> case law that Sections 1692f is applicable here. The record currently before this
> Court does not show that the $14.95 processing fee was a pass-through fee
> initiated by the credit card provider, so the exception observed by *Longo* and
> *Shami* is inapplicable.

*Acosta v. Credit Bureau of Napa County*, 14 C 8198, 2015 WL 1943244, at *3 (N.D. Ill. Apr. 29,
2015).

      50.      In fact, the 11th Circuit, in *Prescott v. Seterus, Inc.* found a violation of §1692f(1)

to be actionable *even when no payment of the unauthorized fee was made* by plaintiff. *See* 635

Fed. Appx. 640, 644 (11th Cir. 2015).

      51.      Moreover, it's important to keep in mind that §1692e of the FDCPA states that "A

debt collector may not use any false, deceptive, or misleading representation or means **in**

**connection** with the collection of any debt." 15 U.S.C §1692e.  As discussed above, the act of

collecting a fee more than a pass-through cost is prohibited by §1692e as the act is "false,

deceptive and/or misleading" when there is no express agreement allowing for such.

      52.      As such, Plaintiff requests that this Court reject any claim that the processing fees

assessed by Defendant are not actionable under §1692f or §1692f(1).

**D. Plaintiff Does Not Contest the Appropriateness of Interest being Collected by Defendant**

      53.      Plaintiff no longer contests whether the interest being collected by Defendant

violates the law.

**E. Genuine Issues of Material Facts Remain with Regards to Plaintiff's Claims under the FCCPA**

54.     Finally, Defendant claims that it did not violate §559.72(9) of the FCCPA because it had the "statutory and contractual ability to collect" the collection fees and credit card processing fees.  For all the reasons explained above, Plaintiff disagrees and submits that genuine issues of material facts do exist as to whether Defendant violated the FCCPA when it sought collection fees and credit card processing fee in excess of actual costs incurred and without *express* permission either through contract or statute.

**CONCLUSION**

For the aforementioned reasons, this Court should deny Defendant's Motion for Summary Judgement as the record demonstrates that there are genuine issues of material fact regarding the lawfulness of the collection costs and credit card processing fees.  Alternatively, Plaintiff requests that this Court enter a judgement in favor of Plaintiff.


DATED: February 6, 2018

Respectfully Submitted,

 /s/ Jibrael S. Hindi                              .
**JIBRAEL S. HINDI, ESQ.**
Florida Bar No.: 118259
E-mail: jibrael@jibraellaw.com
THE LAW OFFICES OF JIBRAEL S. HINDI
110 SE 6th Street, Suite 1744
Fort Lauderdale, Florida 33301
Phone: 954-907-1136
Fax:     855-529-9540

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned hereby certifies that on February 6, 2018, the foregoing was

electronically filed with the Clerk of the Court using the CM/ECF system which will send a

notice of electronic filing to all counsel of record.

 /s/ Jibrael S. Hindi            .
**JIBRAEL S. HINDI, ESQ.**
Florida Bar No.: 118259

21